**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**ST. LOUIS DIVISION**

| | |
|---|---|
| ALEXANDER VIGOUREUX,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>DELTA OUTSOURCE GROUP, INC.,<br><br>　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TCPA, 47 U.S.C. §227<br>2. FDCPA, 15 U.S.C. §1692 *et seq*.<br>3. Invasion of Privacy - Intrusion Upon Seclusion |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Alexander Vigoureux ("Alexander"), by and through his attorneys, alleges the following against Delta Outsource Group, Inc. ("Delta"):

**INTRODUCTION**

1. Count I of Alexander's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Alexander's Complaint is based upon the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*. The FDCPA prohibits abusive and

harassing conduct from debt collectors when attempting to collect on consumer debt.

3. Count III of Alexander's Complaint is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from §652B of the Restatement (Second) of Torts. §652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . that would be highly offensive to a reasonable person."

## JURISDICTION AND VENUE

4. Jurisdiction of the court arises under 28 U.S.C. §§1331, 1367, and 47 U.S.C. §227.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(1), (2) in that Delta resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

6. Defendant is "at home" in Missouri; therefore, personal jurisdiction is established.

## PARTIES

7. Alexander is a natural person residing in Palm Beach County, FL.

8. Alexander is a "consumer" as defined by 15 U.S.C. §1692a(3).

9. Delta is incorporated in Missouri and its principal place of business is located at 62 N Central Drive O'Fallon, MO 63366. Delta can be served on its registered agent CSC-Lawyers Incorporating Service Company, located at 221 Bolivar Street, Jefferson City, MO 65101.

10. Delta is a "debt collector" as that term is defined by 15 U.S.C. §1692(a)(6).

11.     Delta acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12.     Delta is attempting to collect a consumer debt from Alexander allegedly owed to non-party Upstart Network, Inc. ("Upstart").

13.     Alexander obtained a loan from Upstart in an effort to consolidate his debt, which he incurred for personal, family, or household purposes.

14.     In or around 2018, Delta began placing calls to Alexander's cellular phone number (***) ***-3217, in an attempt to collect his debt.

15.     The calls originated from the following numbers: (636) 385-6692; (786) 805-4074; (904) 204-2575; (904) 204-3794; (904) 204-6492; (904) 456-8918; (904) 456-9012; (904) 456-9042 and (904) 456-8918.

16.     Upon information and belief, these numbers are owned or operated by Delta.

17.     On or about December 19, 2018, at approximately 3:08 p.m., Alexander answered a call from Delta and spoke with a representative.

18.     When he picked up the call, Alexander heard a series of clicks, tones or beeps, and an unusually long delay before Delta's representative began speaking, consistent with the use of an automatic dialing system.

19.     The Delta representative informed Alexander that Delta was attempting to collect a debt incurred by Alexander.

20.     During that call, Alexander asked the representative to not call him anymore.

21. Delta ignored Alexander's first request to stop calling him and called him the very next day.

22. On December 20, 2018, at approximately 2:56 p.m., Alexander answered another call from Delta and spoke with a representative.

23. Like before, Alexander heard a series of clicks, tones or beeps, and an unusually long delay before Delta's representative began speaking, consistent with the use of an automatic dialing system.

24. Just as they did in the first call, the representative informed Alexander that Delta was attempting to collect a debt.

25. During that call, and for a second time, Alexander politely asked the representative to not call him anymore.

26. Despite asking at least two Delta representatives to stop calling him, Alexander continued to receive calls from Delta on his cellular phone.

27. On December 31, 2018, at approximately 2:53 p.m., Alexander answered a third call from Delta and spoke with a representative.

28. Again, Alexander heard a series of clicks, tones or beeps, and an unusually long delay before Delta's representative began speaking, consistent with the use of an automatic dialing system.

29. Just as they did in the previous two calls, the representative informed Alexander that Delta was attempting to collect a debt.

30. At this point, Alexander was extremely frustrated by Delta's continuous disregard of his requests for the calls to cease. During his third conversation with Delta,

Alexander told the representative 1) that he was going through financial difficulties 2) to only contact him by mail and 3) that he himself would contact Delta once he was able to make a payment.

31. Undeterred by Alexander's three requests that Delta stop calling him, Delta continued its harassment campaign. Delta's incessant phone calls were a clear attempt to pressure, coerce, oppress, harass, abuse, and/or embarrass Alexander into paying the debt.

32. Between the first time Alexander revoked consent on December 19, 2018 and June 1, 2020, Delta called Alexander not less than **TWO HUNDRED AND ONE** (201) times.

33. On July 24, 2019, in response to varying district court opinions the US House of Representatives passed H.R. 3375 by a vote of 429-3. The House intended to clear up any ambiguity with the TCPA and made it clear that the TCPA covers systems that call consumers from a stored list. H.R. 3375 further clarified that a consumer may revoke consent, even consent given in a contract.

34. Delta called Alexander almost every day for a year and a half.

35. Delta called Alexander multiple times a day, sometimes with only minutes in between.

36. Delta called Alexander during the weekend.

37. Delta called Alexander at all times during the day, from as early as 8 am to as late as 8 pm.

38. Upon information and belief, Delta called and texted, or attempted to call and text friends and family of Alexander with the intention that they would communicate to

Alexander that Delta was attempting to collect a debt from him, causing Alexander additional embarrassment and distress

39. Upon information and belief, Delta's automatic dialer failed to return to the on-hook state within 60 seconds of completion of dialing.

40. Delta is familiar with the TCPA and the FDCPA.

41. Delta called Alexander repeatedly and continuously with the intent to annoy, abuse, or harass Alexander into paying the debt.

42. The means Delta used to attempt collection of Alexander's debt were unfair and unconscionable.

43. Delta's intrusion upon Alexander's seclusion was highly offensive to the reasonable person.

44. Delta's intrusion upon Alexander's seclusion was oppressive and outrageous, and exceeded reasonable collection efforts.

45. Delta called Alexander from different numbers, making it harder for Alexander to recognize Delta's phone numbers or screen the calls he was receiving.

46. Delta continued to call Alexander even after he clearly indicated he could not make a payment and requested that the calls to stop on **three** separate occasions.

47. As a result of Delta's conduct, Alexander has sustained actual damages including but not limited to, embarrassment, emotional and mental pain and anguish.

48. Each and every one of Delta's telephone calls caused Alexander distraction and temporary loss of use of his telephone line.

49. Each and every one of Delta's telephone calls caused Alexander anxiety,

annoyance and embarrassment.

50. Additionally, Delta's phone calls alerted other people that he was getting constant phone calls that caused him noticeable anxiety, annoyance and embarrassment.

51. Alexander was working as a Registered Behavior Technician and his duties involved taking care of people with special needs. Delta's calls disrupted his work and cause distraction at times when people with special needs required his full attention, thereby risking his job and the well being of the people under his care, as well as causing Alexander significant stress.

## COUNT I

### Violations of the TCPA, 47 U.S.C. §227

52. Alexander incorporates the above paragraphs as though the same were set forth at length herein.

53. Delta violated the TCPA. Delta's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, Delta violated 47 U.S.C. §227(b)(1)(A)(iii) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."

  b. Within four years prior to the filing of this action, on multiple occasions Delta violated 47 U.S.C. §227(b)(1)(B) which states in pertinent part, "[i]t shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party".

54. As a result of Delta's violations of 47 U.S.C. §227, Alexander is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that Delta knowingly and/or willfully violated the TCPA, Alexander is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §§227(b)(3)(B), (C).

## COUNT II

**Delta's Violation of the FDCPA, 15 U.S.C. §1692 *et seq.***

55. Alexander incorporates the above paragraphs as though the same were set forth at length herein.

56. Delta violated the FDCPA. Delta's violations include, but are not limited to, the following:

  a. Communicating with Alexander at an unusual time, place, or manner known to be inconvenient to the consumer. 15 U.S.C. §1692c(a)(1).

  b. Communicating, in connection with the collection of Alexander's debt, with any person other than the consumer. 15 U.S.C. §1692c(b).

  c. Engaging in any conduct the natural consequence of is to harass,

oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. §1692d.

    d.    Causing a phone to ring or engaging a person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass. 15 U.S.C. §1692d(5).

    e.    Using false, deceptive, or misleading means in connection with the collection of any debt, including using no less than nine (9) different phone numbers to call Alexander. 15 U.S.C. §1692e.

    f.    Using unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. §1692f.

57.    Delta's conduct, as described above, is actionable under 15 U.S.C. §1692.

58.    The FDCPA provides a consumer with a private right of action against a debt collector for both actual and statutory damages and allows the consumer to recover her reasonable attorneys' fees and costs. §1692k(a).

## COUNT III

### Delta's Invasion of Alexander's Privacy

59.    Alexander incorporates the above paragraphs as though the same were set forth at length herein.

60.    Restatement of the Law, Second, Torts, §652B defines intrusion upon seclusion as "[o]ne who intentionally intrudes . . . upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

61. Delta intruded upon Alexander's seclusion. Delta's offending conduct includes, but are not limited to, the following:

   a. Delta intentionally intruded, physically or otherwise, upon Alexander's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite having unequivocally revoked consent to be called three times.

   b. The number and frequency of the telephone calls to Alexander by Delta constitute an intrusion on Alexander's privacy and solitude.

   c. Delta's conduct would be highly offensive to a reasonable person as Alexander received almost daily calls, calls on Saturdays, calls only minutes from each other, and multiple calls a day.

   d. Delta's conduct would be highly offensive to a reasonable person as Delta called Alexander repeatedly and continuously for one and a half years.

   e. Delta's acts, as described above, were done intentionally with the purpose of abusing and harassing Alexander to pay the alleged debt, or to pay more than Alexander would otherwise.

   f. Delta's conduct constitutes abuse and harassment, and exceeded reasonable collection efforts.

62. As a result of Delta's violations of Alexander's privacy, Delta is liable to Alexander for actual damages. If the Court finds that Delta's conduct was egregious, Alexander may be entitled to punitive damages.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Alexander hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alexander Vigoureux respectfully requests judgment be entered against Delta for the following:

A. Declaratory judgment that Delta violated the TCPA and the FDCPA;

B. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. §(b)(3)(B);

C. Statutory damages of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

D. Actual, statutory and punitive damages pursuant to 15 U.S.C. §1692k(a)(1), (2)(A);

E. Actual and punitive damages for intrusion upon Alexander's seclusion;

F. Attorneys' fees and court costs pursuant to 15 U.S.C. §1692k(a)(3);

G. Awarding Alexander any pre-judgment and post-judgment interest as may be allowed under the law; and

H. Any other relief that this Court deems appropriate.

///

///

///

RESPECTFULLY SUBMITTED,

Dated: August 25, 2020                By: */s/ David A. Chami*
                                      David A. Chami #027585AZ
                                      Attorney for Plaintiff,
                                      Alexander Vigoureux
                                      PRICE LAW GROUP, APC
                                      8245 N 85th Way
                                      Scottsdale AZ 85258
                                      T: (818) 660-5515
                                      F: (818) 600-5415
                                      E: david@pricelawgroup.com